The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and His Honorable Court. Good morning. Please have a seat. Good morning. We have five cases before the court this morning. Four of the cases are oral arguments, which we're going to hear this morning, and one case has been submitted on the briefs. Our first case is Netlist, Inc. v. Samsung Electronics Co., Ltd. Counselor, that's number 24-1707. Counselor Fischel? Yes. You have reserved four minutes of time for rebuttal, correct? Okay. You may proceed. Good morning. May it please the Court. The Netlist 339 patent claims a novel memory module structure that reduces load and noise, improves signal quality and integrity, and increases speed. It uses a latency parameter to control the timing of data paths through a data buffer, and it uses tri-state buffers to actively drive that data so that memory devices get the data at the right moment to act on it. The prior art references that the petition relied on, Elsbury and Halbert, do not teach any of that or make it obvious. I would like to start with the Board's errors in using posted CASN from Elsbury as the latency parameter within Elsbury's switches. Nothing in Elsbury teaches that posted CASN is being used to control data paths, let alone to control the timing of when they are enabled or disabled, and also then the Board tried to fill that gap by using a reference not cited in the petition, the 537 patent, in violation of this Court's ruling in Core Photonics and Section 312. Of course, the argument is that they are not using that reference as an additional reference. It's evidence of general knowledge. Tell me why that's wrong. Even if it were evidence of general knowledge, which it is not, there was no evidence that it was widely known in the general knowledge. Conning-Clicca actually says that you need it to show both that it's in the prior art and that it's within general knowledge. There was no evidence of that because this is attorney argument Samsung raised on reply. Even if there were some evidence of that, which, again, there is not, and it's actually not how the Board was using it, it still would need to be in the petition because it's being used to fulfill a critical structural limitation in the claims, which is the latency parameter. You'll agree with me that you can rely on general knowledge of what is commonly known, widely known, without having to cite a specific reference. I mean, we have some cases that outline exactly what the parameters might be to do that. But I suppose the argument here is that the 537 patent might disclose something, and that's true for every patent. Every patent discloses the knowledge of whatever it is that it recites, but that doesn't necessarily mean that that's general knowledge. And I think that's the issue is whether just the recitation in paragraph 21 of that reference may reflect the understanding of whoever reads that paragraph. It doesn't necessarily reflect what is generally known. A few answers to that question, Your Honor. You're absolutely right. Just citing a prior art reference does not show that it's generally known. That's what Conning-Clicker says. It says you have to show both that it was in the prior art and that it was generally known. Those are separate requirements, evidentiary requirements. Because if that is not the case, if that's not the rule, then anybody in an IPR following the other side's response can come back and cite whatever references they want and say, well, those references reflect the knowledge of what's contained in those references. I'm not using it as a prior art reference. That's not my basis for the petition, so I'm not running afoul of that rule. I'm just citing it for general knowledge. But that can't be the case. There has to be more. Yes, Your Honor. It would create a massive loophole in core photonics and Section 312, which require you to include everything in your prima facie obviousness case in your petition. And here the petition didn't even talk about the concept that the board used the 537 patent to satisfy. It didn't talk about using buffer latency in the context of what is a latency parameter at all. The petition is completely silent on that. But the 537 is attached to the petition as an exhibit and incorporated by reference in your patent that they're challenging. And I think it was the subject of at least deposition testimony. Doesn't all of that make this, at worst, I don't know, harmless error? No, Your Honor, a few reasons. One is if you actually look at the deposition testimony that Samsung cites, it's deposition testimony of our expert, and he refuses to say that this was known. He says a skilled artist could look at it and understand it. That goes to what Judge Lynn just said. It's not something that was generally known. And when you look at, if you're talking about it being incorporated by reference into the spec, this Court's precedents are very clear. You cannot use the specification as a roadmap to identifying obviousness or teaching the claim, which is what that would do. But here we have, and I recognize the Board said a number of different things about the 537, but at least some of the things they said I think are consistent with our law. So at 46, for example, they say, considering the knowledge of a person of ordinary skill in the art as evidenced by the teachings of the 537 patent. The Board is permitted, I think, to make findings of fact as to what the general knowledge of one of skill in the art would be and to say that's sort of reflected in certain prior art that maybe wasn't cited in the petition. That concept is acceptable, correct? In order to make those findings, Your Honor, it would have to have evidence. The Board is not entitled to make a declaration, I think this patent, this one patent I'm pulling out of the stack, is general knowledge. And that's especially true in this case because one of the inventors on the 537 patent is actually the same inventor that was on the 339 patent. Don't they have their own expert? I think it's Subramanian who talks about whether Ellsbury would be understood as adding one clock cycle. So that discussion, Your Honor, goes to Figure 8B. Subramanian actually conceded multiple times that Figure 8B is not relevant here. He said in the specification of Ellsbury also shows that. Ellsbury says that Figure 8B only applies when all ports are active. So that's not the supposed one port disabled embodiment. That's in paragraph 19. It applies to multiple banks concurrently. And Subramanian actually conceded that what Figure 8B is doing there only applies to read operations. Art claims cover write operations. That's at Appendix 9204, Lines 8 to 12. It's also undisputed that 8B shows controlling devices and not data paths. At Appendix 9203, Line 18, Subramanian agrees that what is happening there is, quote, what's sent to the memory device. So that's not evidence of it enabling or disabling data paths. It would also be inconsistent with what the Board did say. The Board relied on posted CASN. Wasn't the 537 patent an exhibit to the petition? It was attached as an exhibit, Your Honor, but that is not sufficient under core photonics and Section 312, which requires the grounds and the evidence being set forth in the petition. Well, there was no surprise here to anybody, was there? This is not a question of surprise, Your Honor. It's a question about statutory compliance with the bounds that Congress has set on the Board's authority in Section 312. Isn't the patent also admitted prior art? It is not admitted prior art, Your Honor. In this Court's decision in Riverwood, it said very clearly that when an inventor cites his own work, it is not admitted prior art, and that is exactly what happened here. The specification in our case with the same inventor cited that inventor's prior work in the 537 patent. So that does not qualify as applicant-admitted prior art. I want to focus a little bit on why what the Board said about posted CASN by itself is also inadequate. It said that posted CASN was used for some purpose. It never explained why or how posted CASN is actually used by the switch in Ellsbury. It's cited to two things, and I want to just take the Court to those two figures. So starting with Figure 9, which is at Appendix 1845. So at the bottom of this figure, you can see it says, All other bits pass through as received from the host. All other bits refers to any bit that it does not have an arrow pointing down from the top of the page. So one of those bits that does not have any arrow pointing down, you can see in the top it says posted CASN. So that shows that posted CASN is not being used by the switch. It's not being modified by the switch in any way. It's being passed through as received by the host. And then the next reference that the Board relies on, the only other place it points to is Paragraph 44. Paragraph 44 describes what is happening in Figure 9. It doesn't say anything about using anything in Figure 9 to enable or disable the switch to time the enablement or disablement of data paths. What it says is that the command that's shown in Figure 9 is used to configure the memory devices. And some of those pieces, the parts with the arrows pointing down, are squelched or modified by the switch. That doesn't say anything about using posted CASN in the way that the claims require the latency parameter to be used. And Subramanian, Samsung's own expert, actually conceded that that's it. At Appendix 9-130, he said that this is the only reference, this paragraph, Paragraph 44, is the only thing that talks about the way that this is being used by the switch. That is not sufficient evidence to sustain the Board's decision finding that the latency parameter limitation is taught. What is going on here, Your Honor, this is a counterintuitive invention. What Netlist did was it added delay in order to speed up its devices. Everyone wanted more capacity, but that increased its load, reduced speed. Ellsbury solved that problem by rejecting delays. It said, I want a device that acts in real time. That's what Ellsbury said. What Netlist did was it solved the problem by introducing more delay. It added power-hungry tri-state drivers, tri-state buffers, that would switch on and off with every write operation. Netlist figured out that it was worth it by testing and developing its groundbreaking HyperCloud product. It actually tested this, and it worked. And that went into the 339 patent. No one else had put all these pieces together, enabling, disabling, latency parameters, tri-state buffers, actively driving data to restore wait forms. That was the invention here. And with that, I would reserve the remainder of my time for rebuttal. Thank you. Good morning, Your Honor. May it please the Court. Mike Walsh for CM Sloan. Obviously, I'll start where judges did and look at this issue of using latency, the question of the 537. And what I'd ask you to do is look at the actual board decision, because I think the board decision here is very instructive, and really what it comes down to is the board looking at expert testimony and agreeing that Sam Teng's expert had provided a basis that was then also supported by the 537 patent. So if you'll turn with me to page 46, which is right there where the conclusion is that concerning the knowledge of a person of ordinary skill, that they would have understood that Ellsbury's posted CAS latency would have been useful to account for propagation delay. That's right at the bottom of that page. In the paragraph above, you see that they talk about both the 537 patent but also the testimony of Samsung's expert. And they specifically find that that expert understood Ellsbury to teach to a person of ordinary skill in the art that one cycle can be added to account for propagation delay. Now, you heard a lot of arguments on this. But that teaching doesn't establish that it was generally known. Your Honor, this is in Ellsbury itself. This is not the 537 patent. So this is part of the person of ordinary skill in the art reading Ellsbury would have understood. So it's not going to the ordinary skill issue. I understand your concern on the 537. This is actually something different. So the board didn't rely only on the 537 patent. If this court considers the board's interpretation of the expert testimony to be substantial evidence, which under this court's law is often substantial evidence, that's enough right there. Now, we did hear... Is that true? Yes, Your Honor. Even if we say there was error in what it did on the 537, can we just ignore that error if there's also substantial evidence from the expert? Well, I think, Your Honor, if you find that the 537 was not adequate evidence by itself, as the board said that... The error I think we would find is that the board used the 537 as at least part of the evidence of what made a limitation in the challenge claims obvious, but yet that was not part of your petitioned grounds for finding anything unpatentable. If we think the board committed that error, but at the same time maybe think that you're right, that the expert would have been sufficient on its own, what do we do at that point? Well, first of all, the court would have to find that using this in reply was inappropriate. The court would have to ignore that we attached it to the petition. The court would have to ignore that it was published more than a year before the application at issue here. All those things being taken into account, if you find a legal error, I would agree with you, there would need to be remand, Your Honor. What is the effect of attaching it to the petition when it is not listed as one of the grounds? It means that it's evidence available only for general knowledge. It's not evidence for, as my colleague said, a structural limitation. It could be evidence of general knowledge even if it wasn't listed in the petition. There are two levels to it, Your Honor. If we put it in the petition, we can raise it in reply no matter what. If we don't put it in the petition, we have to show in reply that we're responding to something in the patent owner's response in order to justify that. We had both. It's not enough that it's just in the petition. In the reply, it has to be a logical connection back to the petition. If you just have it attached there, what's the purpose of it being an attachment? It was attached as art that was available. To put the other side on notice is what you think the scope of the art is, which, of course, is one of the grand underlying factual contentions for obviousness. So having it in the petition is just giving the other side fair notice as to what you think is part of the scope of the art. Let me put it this way. Having it attached to the petition doesn't lessen your burden to show that it's general knowledge. On the general knowledge point, I would agree, Your Honor. We have a finding as to that. So standing here, all I need to show is substantial evidence that something that had been published years before was substantial evidence for the board to make a factual finding. So that is a substantial evidence test. And what was the substantial evidence for the board finding that this would be within the general knowledge of one of the skill in the art, other than the 537 itself? I would say that the timing of the 537, but I would also say, Your Honor, that you should look at the agreed, undisputed level of ordinary skill. Now, that's at appendices page 10 and 11. Of course, in Graham, this is at equal status as the scope of the art. And that included how the memory modules interact with memory controllers, and also the JEDEC industry standards, and the design and operation of standardized DRAM and SRAM memory devices. So we're talking about, in the 537, a patent that had been out there for years and is squarely in the scope of what the ordinary skill in the art is. So I think both of those support as substantial evidence a finding of general knowledge with regard to the 537. But again, the board is very clear in saying, and this is going back to the appendix page 46, as Your Honor pointed out, this is being used as evidence of general knowledge. So as long as we have substantial evidence, which the testimony of the expert is substantial evidence, that's enough. But they do also say, as I'm sure you know earlier in that page, primed with this teaching that is the 537 teaching, which sounds a lot more like they're saying that one of ordinary skill in the art wouldn't bring to the 537 this general knowledge. They need to get that knowledge from the 537, which sounds like it therefore needs to be part of your combination in order to be grounds that the board can rely on to find the claims on patentable. Respectfully, Your Honor, primed with sounds like the level of skill one brings, the general knowledge of what one brings. That's how the person is primed when they're reading Ellsberg. And keep in mind, that's a separate finding. That's a separate piece of evidence the board points to in addition to Samsung's expert. These are both just identifications of evidence supporting the eventual finding made at the bottom of page 46. Do you have anything specific to say about Kony Klika? I always get that name wrong, but we heard it pronounced, I think, correctly several times by your friend. OK. A couple of things I'll say about that. First of all, and we heard this from my colleague, structural limitations was at issue here. And this is certainly not a structural limitation. This is a question of whether a latency parameter has a particular one cycle change with respect to a buffer. All the structure is in Ellsberg, and there's no contention that there's not. How they get from structural limitation to this teaching of the person of ordinary skill in the art, who knows the standards of the industry, which include, I'll point out, and it's the JEDEC reference that is undisputedly known to everyone, lays out the timing. And that's very clear in the record in the JEDEC standard. If you look at, for example, appendix page 2135, it shows the exact timing for how you do one of these right operations and explains that you can have additive latency, which is what you add to deal with what the module is doing. So I think we've got there the ordinary understanding, this is not a structural limitation. We're nowhere close to the case that's cited by the other side. With regard to some of the criticisms that were made, I would like to point, I would like to go to that testimony from the deposition that my colleague pointed out. Because it is definitely something that, first of all, the board has the prerogative to decide that the testimony the board cited was more relevant than the testimony from the deposition. That's a starting point when we're looking at factual findings. But if you just look at that particular testimony, there is an assumption in that testimony. And I'll note my colleague didn't read the actual testimony. Where are you? I'm sorry. This is on appendix page 9204. So this is the deposition testimony that my colleague quoted or cited. What's the volume? That's volume two, Your Honor. I know it's voluminous. Sorry about that. Is it a citation again? 9204. I just say the board looked at a lot of stuff. Is everybody there? OK. So the particular lines that were cited by my colleague are lines 8 to 12. And you'll just see that he assumes that the latency is unchanged. So that assumption actually wipes out this whole issue. Right? Because the testimony that the board pointed to is testimony about changing the latency. That's the whole point. He found a teaching of changing the latency. This answer, he's saying, well, if you assume that the latency is unchanged, yes, that's the answer. So this is not relevant. It doesn't contradict what the board said. What pages did the board rely on then? So the board, so going again to the board, page 46, they, I believe, relied on. So the board cites, of course, they cite to an exhibit, but I've got it. That would be 9181. So again, in this deposition in volume two. So this is the answer at lines 12 to 22. And in the second paragraph of the answer, specifically in lines 19 and 20, he talks about that you reduce the latency specified in the DDRs by one to account for the fact that there is a one cycle delay that's been added in. So that's that one cycle for the buffer that they're referring to in their briefing. The board was justified. We had substantial evidence to rely on that to make its conclusions. My colleague did not address their second argument, which has to do with whether ports are actually memory banks in Ellsbury. If the panel has questions, I'd be happy to address them. You know, I think we're strong on the briefing and the figures that the ports and the banks are different, and the board had substantial evidence for that. Can you just quickly address, is there anything I can see in Ellsbury itself about how the posted CASN is used? I would say that if you ignore the person at Skill and the Art knowing about JEDEC, then they wouldn't know what posted CASN is. And it doesn't explain what they already know from JEDEC. But they do know about posted CASN. The JEDEC reference talks about it throughout all the pages. The person at Skill and the Art reading that posted CASN is provided knows what it's for, because JEDEC provides that. And the board relied on that. And that is substantial evidence for the board. Yes, Your Honor. Do we assume that a person at ordinary skill is aware of the standards? Your Honor, you might not in every case. But in this case, it's expressed. So in appendix 10 and 11, right at the bottom of appendix 10, you'll see it says, petitioner contends such person would have been familiar with various standards of the day, including JEDEC industry standards. And then the board goes on to say, we, this is on page 11, second full paragraph, on this record, we accept petitioner's statement of the level of ordinary skill in the art, except that we omit the qualifier at least before the years of experience. But the JEDEC knowledge was accepted and it's undisputed on appeal. Where does Ellsbury explain how it uses posted CASN to control buffer data paths? As I answered Judge Stark, I would agree that if the reader doesn't know about JEDEC, the reader would not understand what posted CAS is for. But the reader does know about JEDEC. And JEDEC explains in lots of detail why posted CAS is provided. So the reader looking at, oh, you're providing posted CAS, I know what that's for. It's for all these reasons that JEDEC lays out. So is the board a little sloppy maybe when it says, it must be used for this, it must be used for something? What they really mean, I guess you would say, is one of skill in the art knows it must be used for this because they're familiar with JEDEC and the other things that they'd be familiar with. I don't think I would characterize the board as sloppy, Your Honor, but they don't mention JEDEC at that point, but they've mentioned JEDEC in their discussion of it in the pages previous. So I don't think it comes out of nowhere in any way. I think it's clear. I think this court can understand the path the board took to get to that conclusion. I mean, I know the argument was made that JEDEC, in combination with Ellsbury, teaches and shows that technology, but I'm not sure there's any explanation on your part as to, or on the board's part as to why JEDEC fills that gap and explains how Ellsbury uses posted casts and the control buffer data paths. Just to say, well, JEDEC shows you timing and shows you all of these things, doesn't necessarily answer the question, it seems to me. Well, Your Honor, I point you to the petition itself. I mean, if we want to walk through, we did walk through and show with the timing diagrams. And the board agreed with your analysis, but I'm not sure the board explained why it agreed. I think the board didn't have to explain when JEDEC has agreed to be part of the skill. There was no dispute as to that. And we pointed out how JEDEC teaches the specific timing diagrams. Now, my colleague pointed out, hey, but what about this buffer? But again, our expert explained how Ellsbury itself teaches out in that one cycle because of the buffer. That's what the board relied upon. The deposition testimony is not contrary. The evidence is all there for the board's conclusion, and the board specifies it's taking into account JEDEC, it's taking into account the expert's testimony. That's the substantial evidence that the board relied upon in reaching a factual conclusion. Okay, we're out of time. Do you have another question? No, that's it. You sure? Yeah. Okay. Thank you, Your Honor. Counsel Fischel, you have four minutes. Thank you, Your Honor. I want to start with saying the board absolutely here did rely on the 537 patent to supply an important structural limitation. It's talking about the 537 patent in its conversation about how the latency parameter is taught. It cites it 20 times. It refers to its teaching 10 times. And it's doing that because it thinks that this is a big deal. It thinks the 537 patent's teachings are extremely important. But as we just heard, there's no dispute here. It was not in the petition. It was not discussed in the petition. Creating a loophole that allows petitioners to attach 78, 90, 100 exhibits to their petition and just include any prior art reference there and say that's enough to satisfy Section 312 in core frutonics is not appropriate. The skilled artisan also does not need to be primed with a teaching that is already in the general knowledge. That's the reason that you have general knowledge. It's general knowledge that already exists in the field. That's what Kahn and Klicka says. There was no finding in the board's decision that the 537 patent rose to that level of knowledge. And this is very different from JEDEC for exactly that reason. As my colleague pointed out, the JEDEC standards were within the general knowledge. That was actually included in the petition. The board made a finding that JEDEC is within the knowledge of the skilled artisan. The board made no similar findings. There was no similar allegation, and there was no similar proof that the 537 patent did the same thing. My friend on the other side also relied again on Figure 8B, which we discussed earlier. I would just also note that also was not in the petition, and it was not the basis for the board's decision. If you look at the discussion that the board has there, the topic sentence of that paragraph, it's on Appendix 45. The board is talking about the 537 patent, and the next topic sentence of the paragraph that follows it on 46 is also talking about the 537 patent. That is the context in which the board was talking about Figure 8B. Otherwise, I would just say the reason that none of this is in the evidence is because Samsung waited until replied to bring it up. They didn't even have their own expert talk about the 537 patent. My friend pointed to expert testimony at 9,204. He admitted the board did not rely on that testimony. Under Chenery and Stanford, this court may not rely on evidence that the board didn't rely on in order to affirm, and even if Engetic also, to answer Judge Lynn's question from earlier, which was where in Engetic does it say that Post-it Cast-in is used to enable and disable data paths? It doesn't, Your Honor, and we didn't hear any evidence to the contrary from my friend on the other side. It talks about the timing used in DRAM devices. It does not talk about the timing used in data buffers. These are different components with different timing requirements. The board viewed it as absolutely critical that the latency parameter in the claims, which is a latency parameter for controlling data buffers, account for the time it takes to get through a data buffer. The board thought that was important. It was important. The board looked to an impermissible reference to teach that limitation, and with that, we would ask the court to vacate and remand. Thank you. We thank the party for their arguments.